UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV07    5131

GLEESON, J.

POHORELSKY, M.J.

...................................................

PERRY ELLIS INTERNATIONAL, INC.

Plaintiff,

v.                                                          **COMPLAINT**

ARROW AIR, INC.

FILED

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   DEC 10 2007   ★

BROOKLYN OFFICE

Defendant.

...................................................

Plaintiff, PERRY ELLIS INTERNATIONAL, INC., by and through its undersigned
attorneys, SANDLER, TRAVIS & ROSENBERG, P.A., hereby complains against Defendant,
ARROW AIR, INC. ("Arrow") on information and belief as follows:

## NATURE OF ACTION

1.      This is an action for damages, injunctive relief and other appropriate relief arising
under the federal antitrust Sherman Act, 15 U.S.C. §§ 1-7, the State of New York Donnelly Act,
NY CLS Gen Bus § 340, and the State of New York General Business Law, NY CLS Gen Bus §
349.

## PARTIES

2.      Plaintiff, Perry Ellis International Inc., is a Florida Corporation with its principal
place of business at 3000 N.W. 107th Avenue, Miami, FL 33172.

3.      Defendant, ARROW AIR, INC., is a Florida Corporation with its principal place
of business at 1701 NW 63rd Ave., Bldg 712, Miami, FL 33126.  Arrow either directly or through
its predecessors, successors, and/or affiliates, distributed, marketed and/or sold air cargo services
in the United States and in this district.  Plaintiff's claims arise out of Arrow's contacts within

this district, and Arrow knew, or had good reason to know, that its conduct would have injurious effects in this district.

4.      Whenever this Complaint makes reference to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

<strong>Co-Conspirators</strong>

5.      Various other persons, firms, and corporations, not named as defendants in this Complaint, have participated as co-conspirators with Defendant in the violations alleged herein, and have aided and abetted and performed acts and made statements in furtherance of the conspiracy.

<strong><u>JURISDICTION AND VENUE</u></strong>

6.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1337 and 1367.

7.      Venue is found in this district pursuant to 15 U.S.C. §§ 15, 22, 26, and 28 U.S.C. §§ 1391(b)-(d).

8.      Venue is proper in this judicial district because the Defendant resides, transacted business, was found, or had agents in this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out in, this district.

9.      Upon information and belief, Defendant maintains offices, has agents, transacts business, or is found within this judicial district.

10.     This Court has *in personam* jurisdiction over the Defendant because, *inter alia*, the Defendant: (a) transacted business in the United States; (b) directly or indirectly sold and delivered substantial quantities of air cargo services throughout the United States; (c) had substantial aggregate contacts with the United States as a whole; and/or (d) was engaged in an illegal price-fixing conspiracy that was directed at, and had the intended effect of causing injury to, persons and entities residing in, located in, or doing business throughout the United States, including in this district.

## FACTS

11.     Defendant is a provider of air cargo services.

12.     Plaintiff, as a means to transport freight over long distances, uses air cargo services. Air cargo is typically the fastest means of carriage for freight.

13.     The air cargo industry has a number of structural and other characteristics that facilitate the implementation and maintenance of a horizontal price-fixing such as that alleged by Plaintiff herein, specifically:

a.   Air cargo services are a commodity product that is fungible in the sense that air cargo services provided by Defendant are readily substitutable for the air cargo services provided by any other air cargo carrier. Air cargo services are highly homogenous services sold by Defendant and purchased by Plaintiff on the basis of price.

b.   The air cargo service industry in the United States is highly concentrated, facilitating coordination of air cargo prices among the major manufacturers thereof.

c.   There are substantial barriers to entry in the air cargo services industry. Entry into the industry requires a substantial initial investment and a significant period of time. Viable entry requires the purchase or lease of a substantial number of airplanes.

3

Similarly, viable entry requires that a new provider capture a significant market share from existing providers. Thus, entry is both expensive and risky. Air cargo services are a multi-billion dollar annual industry.

14.     Since 2000, many air cargo carriers including Defendant, have coordinated price increases through the use of surcharges, including surcharges for additional security measures, war-risk insurance premiums applied in conjunction with the outbreak of war in Iraq, and surcharges related to the increase in the price of fuel.

15.     Upon information and belief, multiple air carriers, including Defendant, formed alliances, which facilitated the transfer of relevant information. For example, in March 1999, three of the largest Air Carriers – Lufthansa, Singapore Airlines and SAS – began discussing a global alliance of air cargo service providers now known as WOW. The press release touted this desire for "closer co-operation in the air cargo business." Pursuant to a memorandum of understanding among the Air Freight Carriers the members would explore "prospects for wide-ranging integration of network management, marketing and sales, production harmonization and a common infrastructure for information technology."

16.     In October 2001, the members of WOW harmonized their express services so that the services would function as a single product.

17.     In April 2002, the WOW members officially created the WOW alliance, and harmonized their standard cargo products.

18.     The unlawful contract, combination, or conspiracy alleged above had, *inter alia*, the following effects:

a.  Prices charged by Defendant and their co-conspirators to Plaintiff for air cargo services were maintained at artificially high and noncompetitive levels; and

4

b.  Plaintiff was required to pay more for air cargo services than it would have paid in a competitive marketplace, unfettered by Defendant and their co-conspirators collusive and unlawful price-fixing.

19.    During and throughout the period of the contract, combination, or conspiracy alleged above, Plaintiff purchased air cargo services from or to the United States.

20.    Plaintiff paid more for the air cargo services that it purchased than it would have paid under conditions of free and open competition.

21.    As a direct and proximate result of the illegal combination, contract, or conspiracy alleged above, Plaintiff was injured and financially damaged in its business and property.

## Governmental Investigation

22.    Beginning February 14, 2006, the European Commission, the Competition Bureau of Canada, the Korean Fair Trade Commission, and the United States Department of Justice, along with national competition authorities in the European Union, conducted coordinated raids of a number of air cargo carriers' corporate offices.

## Interstate and Foreign Trade and Commerce

23.    The activities of Defendant and its co-conspirators, as described herein, were within the flow of, and substantially affected, interstate and international commerce.

24.    During the time period covered by this Complaint, Defendant and their co-conspirators sold and distributed air cargo services to and throughout the United States.

25.    Defendant and their co-conspirators used instrumentalities of interstate and/or foreign commerce to sell and market air cargo services.

26.    Defendant and its co-conspirators manufactured, sold, and shipped substantial quantities of air cargo services in a continuous and uninterrupted flow of interstate and foreign

commerce to customers located in states and nations other than the states and nations in which Defendant is/was located.

## FRAUDLENT CONCEALMENT AND EQUITABLE TOLLING

27.    Plaintiff had no knowledge of Defendant's unlawful self-concealing conspiracy and could not have discovered the contract, combination, or conspiracy at an earlier date by the exercise of due diligence because of the deceptive practices and secrecy techniques employed by Defendant to avoid detection of and to fraudulently conceal their contract, combination or conspiracy.

28.    Because the contract, combination or conspiracy was kept secret by Defendant, Plaintiff was unaware that prices for air cargo services were secretly agreed upon until February, 2006, when certain air carriers disclosed for the first time that they had been raided by the European Commission in relation to their pricing and marketing of air cargo services.  Before then, Defendant represented publicly, both to customs and otherwise, that their pricing activities relating to air cargo services were unilateral, rather than collusive, and based upon legitimate factors, such as increased costs and other free market considerations.  In making those false representations, Defendant misled Plaintiff as to the true, collusive and coordinated nature of its pricing and other illegal and anti-competitive activities.  While Plaintiff diligently sought to protect itself from unlawful activity, Plaintiff was unable, until February 2006, to detect the above-described secret activity, which, by its nature, is self-concealing.

29.    As a result of Defendant's fraudulent concealment of their conspiracy, the applicable statute of limitations governing Plaintiff's right of action has been tolled.

## CLAIMS FOR RELIEF

### AS AND FOR A FIRST CLAIM
### For Violation of the Federal Sherman Act, 15 U.S.C. § 1

30.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 to 29 inclusive of this complaint, with the same force and effect as though each and every allegation in said paragraphs were set forth in full herein.

31.     From a date unknown, but at least from January 2000, and continuing through the present, Defendant and their co-conspirators have contracted, combined, or conspired in restraint of trade or commerce among the several States, or with foreign nations, in violation of 15 U.S.C. § 1.

32.     In furtherance of the unlawful conspiracy, upon information and belief, Defendant and their co-conspirators have committed overt acts including, *inter alia*:

    a.   Agreeing to charge prices at certain levels and otherwise to fix, increase, maintain, or stabilize prices of air cargo services sold in the United States;

    b.   Communicating with co-conspirators regarding prices to be charged for air cargo services;

    c.   Meeting with co-conspirators in order to keep the existence of the conspiracy unknown so as to foster the illegal anti-competitive conduct described herein;

    d.   Refraining from competition by refusing to offer air cargo services at prices below the agree-upon fixed price; and

    e.   Selling air cargo services at agreed-upon prices.

33.     Defendant and their co-conspirators engaged in the activities described above for the purpose of effectuating unlawful arrangements to fix, maintain, rise, and/or stabilize prices of air cargo services.

34.     Defendant's anti-competitive agreement was implemented by; *inter alia*, a series of coordinated price increase announcements, largely in the form of surcharges that began in 2000. These coordinated price increases continued on a regular basis through the present, with the actual and intended result that Plaintiff paid supra-competitive prices for air cargo services. Defendant falsely attributed these price increases to increases in input costs such as security and energy.

35.     As a direct and proximate result of the air cargo services price-fixing conspiracy, Defendant restrained competition in the air cargo services market sale and injured Plaintiff in its business and property in that Plaintiff paid a higher price for air cargo services than it would have paid absent the concerted unlawful activity.

**AS AND FOR A SECOND CLAIM**
**For Violation of the New York Donnelly Act, NY CLS Gen Bus § 340**

36.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 to 29 inclusive of this complaint, with the same force and effect as though each and every allegation in said paragraphs were set forth in full herein.

37.     From a date unknown, but at least from January, 2000, and continuing through the present, Defendant and their co-conspirators have contracted, agreed, arranged or combined whereby competition or the free exercise of activity in the conduct of business, trade or commerce was established or maintained, in violation of NY CLS Gen Bus § 340.

38.     In furtherance of the unlawful conspiracy, upon information and belief, Defendant and their co-conspirators committed overt acts including, *inter alia*:

a.  Agreeing to charge prices at certain levels and otherwise to fix, increase, maintain, or stabilize prices of air cargo services sold in the United States;

8

b.   Communicating with co-conspirators regarding prices to be charged for air cargo services;

c.   Meeting with co-conspirators in order to keep the existence of the conspiracy unknown so as to foster the illegal anti-competitive conduct described herein;

d.   Refraining from competition by refusing to offer air cargo services at prices below the agree-upon fixed price; and

e.   Selling air cargo services at agreed-upon prices.

39.   Defendant and their co-conspirators engaged in the activities described above for the purpose of effectuating unlawful arrangements to fix, maintain, rise, and/or stabilize prices of air cargo services.

40.   Defendant's anti-competitive agreement was implemented by; *inter alia*, a series of coordinated price increase announcements, largely in the form of surcharges that began in 2000.  These coordinated price increases continued on a regular basis through the present, with the actual and intended result that Plaintiff paid supra-competitive prices for air cargo services. Defendant falsely attributed these price increases to increases in input costs such as security and energy.

41.   As a direct and proximate result of the air cargo services price-fixing conspiracy, Defendant has restrained competition in the air cargo services market sale and injured Plaintiff directly or indirectly in its business and property in that Plaintiff paid a higher price for air cargo services than it would have paid absent the concerted unlawful activity.

## AS AND FOR A THIRD CLAIM
### For Violation of NY CLS Gen Bus § 349

42.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 to 29 inclusive of this complaint, with the same force and effect as though each and every allegation in said paragraphs were set forth in full herein.

43.     From a date unknown, but at least from January, 2000, and continuing through the present, Defendant and their co-conspirators engaged in deceptive acts or practices in the conduct of their business, trade or commerce, in violation of NY CLS Gen Bus § 349.

44.     Defendant and their co-conspirators deceivingly inflated charges for air cargo services, under the cover of surcharges for security, war-risk insurance, and fuel.

45.     As a direct and proximate result of the air cargo services unlawful deception, Defendant has injured Plaintiff in its business and property in that Plaintiff paid a higher price for air cargo services than it would have paid absent the concerted unlawful activity.

## DAMAGES

46.     Plaintiff purchased air cargo services from Defendant, or its subsidiaries, agents or co-conspirators, and by reason of the antitrust violations herein alleged, paid more for such services than it would have paid in the absence of such antitrust violations. As a result, Plaintiff sustained $86,566.10 in damages from Arrow's collection of such surcharges in violation of the claims alleged herein.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all the claims asserted in this Complaint so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Perry Ellis International, Inc. respectfully requests that the Court enter judgment for Plaintiff:

A.      Holding that Defendant's contract, combination or conspiracy, and the acts done in furtherance thereof by Defendant and their co-conspirators were in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

B.      Holding that Defendant's contract, agreement, arrangement or combination, and the acts done in furtherance thereof by Defendant and their co-conspirators were in violation of the New York Donnelly Act, NY CLS Gen Bus § 340.

C.      Holding that Defendant's deceptive acts were in violation of NY CLS Gen Bus § 349.

D.      Awarding Plaintiff with three times the amount of damages it sustained, as allowed by law, together with the costs of this action, including reasonable attorneys' fees.

E.      Permanently enjoining and restraining Defendant, its affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf from, in any manner:

I.      Continuing, maintaining, or renewing the contract, combination, conspiracy, or deception alleged herein, or from engaging in any other contract, combination, conspiracy, or deception having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect; and

II.      Communicating or causing to be communicated to any other person engaged in the manufacture, distribution, or sale of any product except to the extent

necessary in connection with a bona fide sale transaction between the parties to such

communications.

Dated: New York, New York
        December __, 2007

Respectfully submitted,

**SANDLER, TRAVIS & ROSENBERG, P.A.**
Attorneys for Plaintiff
551 Fifth Avenue, Suite 1100
New York, New York 10176
Tel.    (212) 883-1300
Fax     (212) 883-0068
Email:  kwolf@strtrade.com

By:

Kenneth Wolf (KW 0598)